## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ONH AFC CS INVESTORS, LLC, *et al.*, | Case No. 23-10931 (CTG) |
| Debtors. | (Jointly Administered) |
| ANNA PHILLIPS, in her capacity as the Liquidating Trustee of the ONH Liquidating Trust, | Adv. Proc. No. 25-51090 (CTG) |
| Plaintiff, | **Related Docket No. 11** |
| v. | |
| SS ASSOCIATES LLC, | |
| Defendant. | |

## MEMORANDUM OPINION

Elchonon Schwartz, the principal of the debtors, allegedly raised money from investors by promising to use the funds to invest in commercial real estate projects.[1] The complaint in this adversary proceeding alleges that those promises were false, and that Schwartz fraudulently diverted those funds into his own account to use for his own personal benefit.[2]

The nub of the complaint, subject to one complication discussed below, is that after misappropriating the investors' funds, Schwartz then transferred $250,000 from

---

[1] D.I. 1 ¶¶ 14, 16.  Debtors ONH AFC CS Investors, LLC and ONH 1601 CS Investors, LLC are referred to collectively as the "debtors" or as "ONH."

[2] D.I. 1 ¶ 88.

his own bank account to the defendant, SS Associates.[3]  The complaint does not tell us anything about who SS Associates might be or what the $250,000 was for, beyond alleging that the debtors had no relationship with SS Associates and that SS Associates never provided any goods or services to the debtors.[4]

The one complication referred to above is that the complaint waffles a bit about whether it is alleging that SS Associates was the *initial transferee* of an alleged fraudulent conveyance from the debtors, or a *subsequent transferee* of an alleged fraudulent conveyance made by the debtors to Schwartz.  On the one hand, the complaint talks about avoiding "[t]ransfers from the Debtors to Defendant" and asserts that the debtors did not receive any value *from the defendant* in exchange for the transfers.[5]  Those statements suggest that the trustee is suing SS Associates as the initial transferee of an alleged fraudulent conveyance.

On the other hand, the exhibit to the complaint states that the alleged $250,000 transfer was made from an account in Schwartz' name, not an account owned by the debtors.  At argument on SS Associates' motion to dismiss the complaint, counsel for the trustee acknowledged that the alleged transfer to SS Associates was made by Schwartz, and that the trustee was thus seeking recovery from SS Associates as a subsequent transferee.[6]

---

[3] *Id.* ¶ 106 & Ex. 1.  Defendant SS Associates LLC is referred to as SS Associates.

[4] *Id.* ¶¶ 143-145.

[5] *Id.* ¶¶ 107-108 and the titles of the four counts for avoidance (after ¶¶ 129, 140, 149, and 162).

[6] Plaintiff Anna Phillips, as liquidating trustee of the ONH Liquidating Trust, is referred to as the "trustee."

The fact that the complaint seeks to avoid a *subsequent* transfer gives rise to SS Associates' primary argument for dismissal of the complaint – that (a) a trustee cannot recover against a subsequent transferee without first avoiding the initial transfer, and (b) the initial transferee must be a party to any action to avoid the initial transfer. Here, well before initiating the current lawsuit, the trustee reached a global settlement with Schwartz that was reflected in the confirmed plan.[7] That settlement did not by its terms contemplate "avoiding" the debtors' transfers to Schwartz. Because Schwartz was not (and by virtue of the release given in the settlement, presumably cannot be) sued to avoid the transfers from the debtors to him, the implication of SS Associates' argument would be that all subsequent transferees have effectively won get-out-of-jail free cards.

This is a question on which there is a square circuit split and no Third Circuit authority. So there are cases, such as the Tenth Circuit's opinion in *Slack-Horner* and lower court opinions that follow the same reasoning, that support SS Associates' view. This Court, however, believes that those cases are wrongly decided.[8] To be sure, the avoidance of the initial transfer is a predicate to the trustee's recovery from a subsequent transferee. But there is no reason why the initial transferee needs to be a party to that action. If the initial transferee is not a party to the suit in which the initial transfer is avoided, the initial transferee will not be bound by the court's

---

[7] *See In re ONH AFC CS Investors, LLC*, Bankr. D. Del. No. 23-10931, D.I. 214-1 (Ex. 2 ¶ 7(a) (providing for general release in connection with the plan's "Schwartz Nightingale Settlement")). Citations to materials on the docket of the main bankruptcy case are cited to as "Main Case D.I. __."

[8] *In re Slack-Horner Foundries Co.*, 971 F.2d 577 (10th Cir. 1992).

determination.  There is nothing remarkable, however, about a finding that implies one party's liability being a necessary condition to the plaintiff's claim against another.

If a store clerk is negligent in cleaning up a spill in the grocery store, the plaintiff injured in a slip-and-fall accident can sue the grocery store without also suing the store clerk.  As principal, the grocery store is vicariously liable for the negligence of its agent.  In the suit against the grocery store, the plaintiff will need to establish that the store clerk was negligent.  And while the plaintiff is free to name the clerk as a defendant, the plaintiff's failure to do so means only that the judgment against the grocery store will not be preclusive against the clerk.  It does not bar the plaintiff from suing the grocer on a vicarious liability theory.

Suing a subsequent transferee on a fraudulent conveyance is no different.  Like the slip-and-fall plaintiff who needs to show that the store clerk was negligent, the trustee will be required to establish the elements necessary to avoid the transfer from the debtor to the initial transferee.  And if the initial transferee is not a party to the action, the initial transferee will not be bound by the court's determination.  But like the vicarious liability of the grocery store depends on a showing of the clerk's negligence, the liability of the subsequent transferee depends on the plaintiff proving all of the elements necessary to establish the initial transferee's liability – whether or not the initial transferee is a party to the action.

The central error of SS Associates' argument, like the error in the reasoning of *Slack-Horner* and similar cases, is that it seems to conceptualize the "avoidance" of a

4

transfer as if it were an *in rem* determination, where the initial transferee is a necessary party to the avoidance, and once a court has found the transfer to be avoided, that determination is thereafter binding on the world.  Indeed, even some of the cases that break with *Slack-Horner* seem to accept that premise.  In this Court's view, however, that is a misunderstanding.  Avoidance is just an element of liability that must be shown to permit a trustee, as plaintiff, to recover against a defendant under § 550.  That is simply an *in personam* action against the defendants named in that lawsuit.  And the court's judgment, like any *in personam* judgment, binds only those who are parties thereto.

Accordingly, there is no reason why the trustee cannot assert a claim against SS Associates in which it seeks to avoid the transfer to Schwartz as a fraudulent conveyance and then recover against SS Associates as a subsequent transferee.  Like the grocery store that wanted to argue that its clerk was not negligent, SS Associates may assert any defense to avoidance that Schwartz could have asserted.  To be sure, Schwartz' absence from the lawsuit may mean that SS Associates is required to take third-party discovery to defend against the avoidance of the initial transfer.  But this is hardly the only circumstance in which a civil defendant requires third-party discovery to mount a defense.

For that reason, SS Associates' motion to dismiss the trustee's complaint *with prejudice* will be denied.  The complaint is, however, deficient in one respect.  While the facts as alleged in the complaint provide a basis for avoiding the transfer from the debtors to Schwartz as an intentional fraudulent conveyance and for recovery

against SS Associates as a subsequent transferee, the four specific counts for avoidance (Counts I – IV) are most naturally read to avoid a transfer from the debtors to SS Associates – not from the debtors to Schwartz.  That would make sense if the defendant were alleged to be the initial transferee, rather than the recipient of a subsequent transfer.  Under the statute, a *subsequent* transfer is not itself avoided. Rather, the plaintiff is entitled to recover from such a subsequent transferee after the *initial* transfer is avoided.

Counsel for the trustee made clear at argument that this is what the trustee seeks to accomplish.  But because the existing complaint reads otherwise, the most appropriate course is to require the trustee to amend the complaint to eliminate the confusion.  A lawsuit seeking to avoid the transfers from the debtors to Schwartz, and to recover the avoided transfer (or the value thereof) from SS Associates as a subsequent transferee, may proceed.  The existing complaint, however, will be dismissed with leave for the trustee to file an appropriate amended complaint within 30 days.

## Factual and Procedural Background

Schwartz formed the debtors as part of a group of companies organized under Nightingale Properties LLC, with the stated intention of raising equity from third parties to invest in real estate in Atlanta, Georgia (the Atlanta Financial Center) and Miami Beach, Florida (Lincoln Place).[9]  Nightingale raised funds for offerings for the

---

[9] D.I. 1 ¶¶ 17-18.

debtors through the CrowdStreet investor platform.[10]   Accredited investors were required to execute subscription agreements, which provided that the capital raised would be held in the debtors' bank accounts.[11]

These accounts were controlled by Schwartz on behalf of the debtors.[12]   The subscription agreements, the private placement memoranda, and the marketplace services agreement with CrowdStreet all stated that investors' subscription money would only be used on or after the closing of the purchase of the Atlanta Financial Center or Lincoln Place.[13]   That is not, however, what happened.   Instead, Schwartz removed the funds from the debtors' accounts, using the investors' funds for his own personal use.[14]

In February 2025, Schwartz pled guilty to wire fraud.[15]   Schwartz admitted that, among other things, "[n]otwithstanding [his] representations and restrictions on the use of funds … [he] misappropriated and converted the funds raised through CrowdStreet."[16]   He also admitted to making representations to creditors that he knew were false when he made them and that he was acting as the debtors'

---

[10] *Id.* ¶ 23.

[11] *Id.* ¶¶ 44, 47.

[12] *Id.* ¶ 47.

[13] *Id.* ¶ 46.

[14] *Id.* ¶ 95.

[15] D.I. 1 ¶ 89.

[16] *Id.* ¶ 90.

representative when he made statements in regard to the restrictions on the use of funds.[17]

The specific transfer at issue here was a transfer of $250,000 from a bank account in Schwartz' name to SS Associates.[18]  The complaint alleges (at least when reasonable inference are drawn in favor of the plaintiff, as the law requires) that these funds were originally raised by the debtors from investors and then moved by Schwartz into his personal bank account.[19]  The complaint further alleges that the debtors had no business dealings with SS Associates and received no value in exchange for the transfers.

In July 2023, the debtors filed voluntary petitions for relief under subchapter V of chapter 11 of the Bankruptcy Code.[20]  This Court confirmed the debtors' plan in December 2023.[21]  The trust, which under the plan succeeded to the debtors' claims and causes of action, commenced this lawsuit in July 2025.[22]  Defendant has moved to dismiss.[23]  That motion is fully briefed and was argued in December 2025.

## Jurisdiction

This action arises under §§ 544, 548, and 550 of the Bankruptcy Code and is therefore within the district court's "arising under" jurisdiction set out in

---

[17] *Id.* ¶ 92.

[18] *See id.,* Ex. 1.

[19] *Id.* ¶¶ 57-58.

[20] *Id.* ¶¶ 7, 80.

[21] Main Case D.I. 214.

[22] D.I. 1 ¶ 12.

[23] D.I. 11.

28 U.S.C. § 1334(b).  It has been referred to this Court under 28 U.S.C. § 157(a) and the district court's February 29, 2012 standing order of reference.  There is no need to address, at this preliminary stage, whether the Court has the authority to enter a final judgment.

## Analysis

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[24]  On a motion to dismiss, courts are charged with construing the complaint "in the light most favorable to the plaintiff."[25]  The complaint need not contain "detailed factual allegations."[26]  It must, however, contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[27]

A complaint will survive a motion to dismiss if the factual allegations of the complaint "state a claim to relief that is plausible on its face."[28]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29]

---

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).

[25] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[26] *Iqbal,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[27] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[28] *Id.* (quoting *Twombly*, 550 U.S. at 570).

[29] *Id.*

## I.    The complaint fairly alleges that SS Associates is a subsequent transferee of a fraudulent conveyance.

Under the Bankruptcy Code, a trustee seeking to recover an alleged fraudulent conveyance must first "avoid" the transfer in question.  Section 548 authorizes the trustee to avoid the transfer if the statutory elements are met.[30]  In addition, a trustee may also exercise the rights granted under § 544(b) to avoid a transfer that, immediately before the bankruptcy, could have been avoided by a creditor.  Once a transfer is avoided (whether under § 548 or § 544(b)), the trustee may recover, under § 550(a)(1), "the property transferred" or "the value of such property" from "the initial transferee" or "the entity for whose benefit such transfer was made."  In addition, § 550(a)(2) permits the trustee to recover the property transferred or its value from "any immediate or mediate transferee of such initial transferee," subject to the defenses set forth in § 550(b).[31] While, under this statutory structure, "avoidance" is logically antecedent to "recovery," it is typical for "avoidance" and "recovery" to be pled in a single lawsuit.

### A.    The complaint adequately alleges that the debtors made an actual fraudulent conveyance to Schwartz.

Sections 548 and 544(b)(1) give the trustee the authority to avoid fraudulent conveyances.  Section 548(a)(1)(A) provides that a transfer made with the intent to hinder, delay, or defraud creditors is avoidable.  Section 544(b)(1)'s "strong arm" power gives the trustee the power to avoid a fraudulent transfer under applicable

---

[30] 11 U.S.C. § 548.

[31] The Court will refer to such an "immediate or mediate transferee of such initial transferee" as a subsequent transferee.

non-bankruptcy law by allowing the trustee to step into the shoes of an actual unsecured creditor.[32]

To prevail on a claim for actual fraudulent conveyance, the trustee must prove that the debtor made the transfer with the intent to hinder, delay or defraud creditors.  The facts set forth in the complaint, if proven, are sufficient to permit the conclusion that the debtors moved the funds into Schwartz' account for the purpose of defrauding creditors.  The factual allegation in the complaint is that Schwartz raised tens of millions of dollars from investors based on the representation that he was going to use the money to develop real estate.  But Schwartz allegedly caused the debtors to transfer the money investors gave to ONH into his personal bank account, with the intent to use the money for his own personal benefit instead of for the real estate projects.  Thus, the facts set forth in the complaint are sufficient to allege that Schwartz' transfer of funds from the debtors into his personal bank account was made with the purpose to hinder, delay, or defraud the investors who then became "creditors" by virtue of the fraud.

### B. The complaint adequately alleges that the defendant is a subsequent transferee from which the transfer or its value may be recovered under § 550(a)(2).

Section 550(a) provides that the trustee may recover the property transferred or, if the court orders, the value of the property from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate

---

[32] 5 *Collier on Bankruptcy* ¶ 544.06 (16th ed. 2025).

or mediate transferee of such initial transferee."[33]  To be a transferee, a defendant must have dominion over the assets or the ability to use the assets for defendant's own purposes.  For that reason, a party who may have physical possession of the funds, but is acting as a "mere conduit," is not a transferee.[34]  As the plaintiff, the trustee of course bears the burden of showing that the defendant is in fact a transferee.

Here, the complaint sufficiently alleges that SS Associates received funds from Schwartz that the debtors had previously fraudulently conveyed to Schwartz.  In substance, the complaint alleges that Schwartz took $250,000 that had been transferred to him by the debtors and paid those funds from his own bank account to SS Associates.  Those facts, if proven, would be sufficient to establish SS Associates' *prima facie* liability as a subsequent transferee on a fraudulent conveyance claim.

A subsequent transferee may assert not only defenses to the avoidance of the initial transfer, but also those defenses available to a subsequent transferee under § 550(b).  The potential availability of an affirmative defense, of course, rarely provides a basis for dismissing a complaint, and SS Associates makes no such argument here.

---

[33] 11 U.S.C. § 550(a).

[34] 5 *Collier on Bankruptcy* ¶ 550.02 (16th ed. 2025).

## II.   While the initial transfer must be avoided before any recovery may be had under § 550, the initial transferee need not be named in the lawsuit in order for the trustee to do so.

SS Associates' central argument is that (a) the initial transfer must be avoided before there can be a recovery and (b) the initial transferee must be a party to the suit seeking to avoid the initial transfer.  As described above, the first part of this argument is correct.  The second part, however, is not.

It is true that the trustee must avoid the initial transfer in order to recover against either an initial or a subsequent transferee.  That involves pleading and proving each of the elements necessary to avoid the transfer.  If the trustee succeeds at proving those elements, the trustee may recover from either the initial transferee or a subsequent transferee.  The confusion in some of the caselaw seems to stem from the belief that the initial transferee needs to be a party to a lawsuit seeking to avoid the initial transfer.  But there is no reason why that needs to be the case.

Most of the courts to have considered the issue have correctly held that a transfer can be avoided, and recovery had from a subsequent transferee, without suing the initial transferee.[35]  For example, the Ninth Circuit BAP held in *AVI* that "the concepts of avoidance and recovery [are] separate and distinct," and therefore

---

[35] *See*, *e.g., Image Masters, Inc. v. Chase Home Fin.*, 489 B.R. 375, 398 n.18 (E.D. Pa. 2013) ("We find persuasive those cases that have held that § 550 does not render recovery from a subsequent transferee dependent on a prior action or recovery against the initial transferee. Indeed, the language of § 550 provides that a trustee may recover from either: the initial transferee or any immediate or mediate transferee of the initial transferee."); *In re Advanced Telecomm. Network, Inc.*, 321 B.R. 308, 328 (M.D. Fla. 2005) ("Applicable case law and statutes do not require suit against the initial transferee before seeking to recover an avoidable transfer against subsequent transferees. Section 550 of the Bankruptcy Code provides that a plaintiff may recover a fraudulent transfer from the initial transferee or any immediate or mediate transferee.").

there is no need for the initial transferee to be a party to the action against the subsequent transferee.[36]  The court thus followed a decision of the district court for the Northern District of California that permitted a trustee to seek avoidance and recovery against a subsequent transferee despite the fact that the initial transferee, who had filed a separate bankruptcy case and obtained a discharge, could not be named in the avoidance action.[37]

The court in *SIPC v. Madoff* similarly concluded that "there is no basis in the language of either section 550(a) or the Bankruptcy Code's avoidance provisions to assume that avoidance actions must be brought – or fully adjudicated – against an initial transferee for recovery proceedings to go forward against a subsequent transferee."[38]

In fairness, even some of the cases that reach the right result treat this issue as being harder than it ought to be.  The Eleventh Circuit's decision in *International Administrative Services*, for example, implicitly accepts the notion that the initial transferee would need to be a defendant in order to avoid the initial transfer.  For that reason, the Eleventh Circuit suggested that it is not necessary actually to "avoid" the transfer.[39]  Rather, the Eleventh Circuit suggested that it would be sufficient to

---

[36] *In re AVI, Inc.*, 389 B.R. 721, 734 (B.A.P. 9th Cir. 2008).

[37] *Id.* at 733 (citing *In re Richmond Produce*, 195 B.R. 455 (N.D. Calif. 1996)).

[38] *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 31 (S.D.N.Y. 2013).

[39] *In re International Administrative Services, Inc.*, 408 F.3d 689, 704 (11th Cir. 2005).

show that the initial transfer is "avoidable."[40]    The court added that a "strict interpretation of § 550(a) produces a harsh and inflexible result."

And the Tenth Circuit takes this reasoning a step further – agreeing with the Eleventh Circuit that the initial transfer cannot be avoided without the presence of the initial transferee, but declining to construe the statute in a way that avoids the consequences of that reasoning.  In *Slack-Horner*, Boulder County sold the debtor's property to a buyer to satisfy a tax lien.[41]    The trustee in bankruptcy brought an action against the buyer, arguing that the sale (which was for less than $70,000, when the trustee contended that the property was worth $170,000) was a fraudulent conveyance.

The Tenth Circuit, however, did not conceptualize the tax sale as a transfer from the debtor to the buyer.  Instead, it construed Colorado law to provide that the debtor's land transferred as a matter of law from the debtor to the state upon the imposition of the tax lien.[42]    The state then transferred its interest to the buyer at the

---

[40] *Id.*  Similarly, the *SIPC v. Madoff* court believed that the language in § 550, stating that a transfer may be recovered "to the extent" it is avoided, arguably supported the contention that, in order to assert a claim against a subsequent transferee, a trustee "must first obtain a fully litigated, final judgment of avoidance against the relevant initial transferee."  501 B.R. at 30-31.  *See also id.* at 31 (finding that the "ambiguities" in the statute are clarified by "the overall structure of the Bankruptcy Code's avoidance and recovery provisions").  *See also* 5 *Collier on Bankruptcy* ¶ 550.02 (16th ed. 2025) (noting that the language "to the extent that" has "sometimes been interpreted to require a successful avoidance action against the initial transferee before recovery may be had from a subsequent transferee").

[41] *Slack-Horner*, 971 F.2d at 580.

[42] This aspect of the *Slack-Horner* decision appears to confuse the ownership of a lien on property with ownership of the property itself.  The Supreme Court's decision in *United States v. Whiting Pools*, 462 U.S. 198, 210 (1983), emphasizes the importance of that distinction.  *See id.* at 203 (explaining that the IRS had a lien on property it had seized, but that "property of the estate in which a creditor has a secured interest" is still property of the estate – not the secured creditor).  The Tenth Circuit's analysis of the avoidance and recovery

auction.[43]  As a result, the buyer was not an initial transferee under § 550(a)(1) but instead was a subsequent transferee under § 550(a)(2).  And the court denied recovery under § 550(a)(2) because the trustee did not name the state (the initial transferee) as a defendant in the action.[44]

The bankruptcy court for the Northern District of Ohio followed this reasoning in *Trans-End Technology*.[45]  There, the debtor had transferred funds to its parent corporation, which in turn transferred those funds to the defendant (a law firm).  The trustee sued the law firm, seeking to recover against it as a subsequent transferee, without naming the parent corporation (the initial transferee) as a defendant.  The trustee argued, based on the reasoning that the Eleventh Circuit adopted in *International Administrative Services*, that "he must only prove that the Debtor's initial transfer to [the parent] is *avoidable* in order to recover the transfer of funds received [by the law firm]."[46]  Following the reasoning of *Slack-Horner*, however, the bankruptcy court rejected that argument and dismissed the complaint.  "[A] trustee

---

issue proceeds on the understanding that the state obtained ownership of the debtor's property and then sold its interest to a buyer.  This Court will accordingly accept that premise for the purpose of addressing the Tenth Circuit's analysis of the issues of avoidance and recovery.

[43] *Slack-Horner*, 971 F.2d at 580 (the tax lien "was subsequently sold to [the buyer] at the tax sale").

[44] *Id.* (stating that the trustee "made no attempt to have the transfer from the debtor to state avoided under § 548(a)(2))").  *See also id.* at 583 (Seymour, J., dissenting) (concluding that a suit against a subsequent transferee is not "precluded because the trustee did not go against the initial transferee, the state").

[45] *In re Trans-End Technology, Inc.*, 230 B.R. 101 (Bankr. N.D. Ohio 1998).

[46] *Id.* at 104 (emphasis added).

must actually avoid an initial transfer as a prerequisite to obtaining recovery from subsequent transferees."[47]

The central flaw of the *Slack-Horner* line of reasoning, which is implicitly accepted even in cases like *International Administrative Services* that reject its holding, is that it fails to recognize that the "avoidance" of a transfer is simply an element of claim that needs to be proven against the defendant against whom recovery is sought. It is insufficient to show that the initial transfer is "avoidable." The language of the statute is clear that the initial transfer must be avoided. There is no reason, however, why the initial transferee needs to be a party to the lawsuit in which that transfer is avoided.

The central analytic flaw in these cases is that they do not treat the avoidance of the "transfer" like an element of a lawsuit that must be established for the trustee to establish the liability of a particular defendant. Rather, they treat the "transfer" almost as if it were a physical object existing somewhere in the universe, and a bright orange sticker with the word "avoided" either has or has not been affixed to it. If it has, then the transfer has been avoided with respect to everyone and anyone, and the trustee is welcome to pursue subsequent transferees. But if the transfer has not been avoided in a case involving the initial transferee, then it cannot be "avoided" at all.

---

[47] *Id.* at 105. The bankruptcy court reached the same conclusion in *In re Enron Corp.*, 343 B.R. 75 (Bankr. S.D.N.Y. 2006). There, the initial transferee had been dissolved and therefore could not be named as a defendant. *Id.* at 80. The bankruptcy court dismissed the complaint, finding that under the "plain language" of the statute "a prerequisite to the ultimate recovery is the actual avoidance of a transfer." *Id.* at 81. That decision was reversed on appeal, though the published order reversing the bankruptcy court's decision merely states that the decision is reversed for "the reasons [the district court] stated on the record." *In re Enron Creditors Recovery Corp.*, 388 B.R. 489, 490 (S.D.N.Y. 2008).

At most, in the reasoning of *International Administrative Services*, it can be shown to be "avoidable."

There is no reason, however, why the "avoidance" of a transfer should be conceptually different than a finding, as described above, that a store clerk was negligent. To be sure, the plaintiff suing the grocery store on a vicarious liability theory must prove the clerk's negligence as an element of the plaintiff's claim. But a finding that the clerk was (or was not) negligent in a case to which the grocery store was not a party would not be binding on the grocery store.[48] And a finding in a suit involving the clerk but not the store would not be binding on the store.[49] No one would think that clerk either has or has not been stamped "negligent." Rather, the finding of a court in a particular case binds the parties to that case. That is simply how *in personam*, as opposed to *in rem*, civil litigation operates. As the *Restatement of Judgments* explains, there is a difference between the preclusive effect of a "personal judgment" and an *in rem* proceeding – an action "based only on jurisdiction to determine interests in a thing."[50] The difference is that the *in personam* judgment binds the parties to the lawsuit whereas an *in rem* judgment binds everyone who may have an interest in the *res*.

---

[48] *See Restatement of Judgments (Second)* § 34 ("A party is bound by and entitled to the benefits of the rules of res judicata with respect to determinations made while he was a party, [subject to certain exceptions, while a] person who is not a party to an action is not bound by or entitled to the benefits of the rules of res judicata, [again subject to certain exceptions].")

[49] *Id.*

[50] *See id.* §§ 17, 30.

For those reasons, this Court agrees with *Slack-Horner* and the cases that follow it that the transfer from the debtor to the initial transferee must be *actually avoided*, not merely shown to be "avoidable," before a subsequent transferee can be held liable. But there is no reason that the initial transferee needs to be a party to the lawsuit in order to accomplish that. If the initial transferee is not a party to a suit against a subsequent transferee, and a trustee successfully makes out the elements of a fraudulent conveyance from the debtor to the initial transferee, then the transfer has been *actually avoided* as applied to the subsequent transferee. That finding of avoidance binds only the subsequent transferee, not the non-party initial transferee.[51]

It is true that if a trustee sues a subsequent transferee in a case to which the initial transferee is not a party, the defendant may require third-party discovery (from the initial transferee) in order to assert whatever defenses there may be to

---

[51] The court in *In re Student Aid Center, Inc.*, 608 B.R. 583 (Bankr. S.D. Fla. 2019), was therefore correct to note, consistent with ordinary principles of preclusion, that "if the defendant in a section 550 action was a party to an action in which the subject transfer was avoided, then, obviously, collateral estoppel, or res judicata, as appropriate, would apply." *Id.* at 589 n.10. The Court disagrees, however, with the suggestion that the avoidance of the transfer in a case involving a *different* party would be sufficient to meet the trustee's *prima facie* burden of avoiding the transfer, subject to the defendant's right to attack that conclusion "as an element of the defense, which means the burden of proof as to avoidability is on the defendant." *Id.* at 587. An excellent bankruptcy hornbook praises this aspect of the *Student Aid Center* decision as "Solomonic[]." Charles Jordan Tabb, *et al.*, *Law of Bankruptcy* 487 n.2 (6th ed. 2024). Ordinary preclusion principles, however, do not permit one to "split the baby" by relying on a judgment in a case to which the defendant was not a party for the purposes of shifting the burden of proof. A judgment either is or is not entitled to be given preclusive effect. And a judgment in a case to which the defendant was not a party is not. This Court is unaware of any principle of the law of preclusion that would support the "middle ground" solution suggested by the court in *Student Aid Center*.

avoidance. But defendants often need third-party discovery. This provides no reason to deviate from the application of ordinary legal principles.

And applying those ordinary principles here, the avoidance of a transfer from the debtor to the initial transferee is simply an element that the trustee must establish in order to recover a transfer or its value from a subsequent transferee. There is no reason why this set of circumstances should be treated differently from any other circumstance in which establishing a claim against one party effectively requires a showing that another (sometimes absent) party would also have liability, such as in the vicarious liability context. The law is clear that in an action premised on vicarious liability against a principal, the agent need not be named as a party. As *Moore's Federal Practice* explains, the "compulsory party joinder rule generally does not require joinder of principal and agent."[52] And in the closely analogous circumstance of joint-and-several liability, the Supreme Court has made clear that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."[53]

---

[52] 4 *Moore's Federal Practice* § 19.06 (3d ed. 2025); s*ee also Rieser v. District of Columbia,* 563 F.2d 462, 469 n.39 (D.C. Cir. 1977) ("When Rieser moved to dismiss his claims against Abron, the District represented that it would raise no defenses to the respondeat superior claim based on the absence of Abron. This concession was unnecessary, since the employee is not a necessary party to a suit against his employer under respondeat superior. This concession by the District did not, of course, waive any right to challenge the court's jurisdiction." (internal citations omitted)); *Milligan v. Anderson*, 522 F.2d 1202 (10th Cir. 1975).

[53] *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). *See also Nottingham v. General Am. Commc'ns Corp.,* 811 F.2d 873, 880 (5th Cir. 1987) ("Moreover, it is well-established that Rule 19 does not require the joinder of joint tortfeasors.").

For these reasons, the Court rejects SS Associates' argument that the complaint fails to state a claim on account of Schwartz' absence as a defendant. The complaint alleges that Schwartz fraudulently misappropriated investors funds for his own personal use by transferring the funds from ONH to his personal Chase bank account. That adequately alleges that Schwartz is an initial transferee of a fraudulent conveyance. If the trustee can prove those facts in an action to which SS Associates is a party and Schwartz is not, the transfer will be "avoided" as to SS Associates, but that finding would not be binding on Schwartz. It is no different from proceeding in an action against a grocery store that is premised on the negligence of the non-party store clerk. Simply as a matter of ordinary legal principles, there is no reason why the initial transferee must be a party to the action.

### III.    Because the complaint does not expressly seek to avoid the transfer to Schwartz, this complaint will be dismissed with leave to amend.

While a complaint may go forward that seeks to avoid the initial transfer to Schwartz and then recover against SS Associates as a subsequent transferee, SS Associates makes a fair point that this complaint does not quite seek to do that. Rather, Counts I-IV purport to seek the "avoidance" of the transfers to SS Associates, as if it were the initial transferee. But as counsel for the trustee noted at oral argument, it was not. The existing complaint will therefore be dismissed. The plaintiff, however, will be granted leave to file an amended complaint within 30 days. Such leave will be without prejudice to any further arguments that SS Associates may wish to advance regarding the sufficiency of any such amended complaint.

## Conclusion

For the foregoing reasons, the motion to dismiss will be granted without prejudice to the plaintiff's right to file an amended complaint within 30 days. The Court will issue a separate order so providing.

Dated: February 4, 2026

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE